IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R. SHERWIN PARUNGAO, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 4453 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COMMUNITY HEALTH SYSTEMS, INC., a | ) | |
| Delaware corporation, COMMUNITY HEALTH | ) | |
| SYSTEMS PROFESSIONAL SERVICES | ) | |
| CORPORATION, a Delaware corporation, | ) | |
| GALESBURG HOSPITAL CORPORATION, an | ) | |
| Illinois corporation d/b/a Galesburg Cottage | ) | |
| Hospital, KNOX CLINIC CORP, an Illinois | ) | |
| corporation, and MARK E. DAVIS, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff R. Sherwin Parungao has brought a six count complaint against defendants Community Health Systems, Inc. ("CHSI"); Community Health Systems Professional Services Corporation ("CHSPSC"); Galesburg Hospital Corporation, d/b/a Galesburg Cottage Hospital ("GCH"); Knox Clinic Corp. ("Knox Clinic") and Mark E. Davis, M.D. All claims arise out of the termination of plaintiff's employment at GCH through Knox Clinic. Count I is brought against Knox Clinic, CHSI and/or CHSPSC alleging a breach of plaintiff's employment agreement. Count II alleges tortious interference with contractual relations against defendants Davis and GCH. Counts III and IV assert breach of contract claims against Davis, GCH, Knox Clinic and CHS and/or CHSPSC alleging a violation of the GCH Medical Staff Bylaws. Counts V and VI are brought against all defendants and are claims for intentional infliction of emotional distress and civil conspiracy.

Plaintiff originally filed his complaint under seal along with an ex parte motion to keep the entire case under seal, arguing that because he claims that he was subject to certain retaliatory actions "disguised by defendants as medical staff peer review, even though no adverse actions were taken against plaintiff," there is the potential that all subsequent filings would be subject to the privilege from disclosure contained in the Illinois Medical Studies Act, 735 ILCS 5/8-2101 et seq. (the "Act"). The court originally granted plaintiff's motion and directed the clerk of the court to seal the entire file pending further order.

All defendants have now been served and appeared, and CHSI has moved to dismiss for lack of personal jurisdiction. Plaintiff has moved to extend the seal of the entire case. For the reasons described below, the motion to extend the seal is denied and, subject to the directions below, the parties are directed to file all further pleadings in the public record.

## BACKGROUND[1]

Plaintiff is a general surgeon. Starting in 2006 he was granted medical staff membership and clinical privileges pursuant to GCH's Medical Staff Bylaws. Approximately three years after joining the GCH medical staff, plaintiff was offered and accepted full time employment at GCH through Knox Clinic. His employment was conditioned on maintaining good standing and maintenance of privileges as a member of GCH's medical staff. In 2012 he renewed his employment through an October 19, 2012, employment agreement with Knox Clinic. That agreement had a five year term, but could be terminated by either party without cause on 180 days written notice.

---

[1] The background facts are taken from the allegations in the complaint.

Sometime in January, 2013, defendant Davis, who is president of GCH's medical staff and a member of the GCH Medical Executive Committee ("MEC"), undertook efforts to convince Earl Tamar, CEO of GCH and Knox Clinic, as well as the remaining members of the MEC, that plaintiff suffered from some sort of mental impairment and posed a threat to patient safety. Davis also told plaintiff that the MEC was considering undertaking an investigation (peer review) of plaintiff. Davis encouraged plaintiff to circumvent the anticipated peer review by self-reporting that he suffered from an impairment. This would give Davis the ability to convince the MEC to forego the investigation. Plaintiff refused to self-report and told Davis that he would cooperate with any legitimate MEC investigation, and in the event that the MEC determined corrective action was necessary, plaintiff would defend his professional conduct.

Unbeknownst to him at that time, plaintiff later discovered that during the time period in which Davis was asking plaintiff to make a false self-report of impairment, Davis was actively pursuing and ultimately engaging in a sexual relationship with a member of plaintiff's immediate family. Once that family member ended that relationship, Davis went to Tamar and the MEC seeking a termination of plaintiff's employment and medical staff privileges.

May 21, 2013, Knox Clinic, through Tamar, gave plaintiff a written 180 day notice of termination of employment without cause. Tamar also informed plaintiff that GCH would not allow plaintiff to exercise his medical privileges. Two days later plaintiff received a directive from the MEC to submit himself for an examination and evaluation to determine whether he suffered from an impairment. There was no formal peer review or other investigation pending at that time. Tamar told plaintiff that if he did not submit to an evaluation that resulted in a finding of impairment, GCH would cause a negative report to be made to the National Practitioner Data

3

Bank ("NPDB"). Plaintiff sought information from GCH and MEC to determine if any investigation had been properly instituted under the bylaws or Impaired Practitioner Policy, but GCH and MEC refused to respond. Because no committee was properly convened, plaintiff refused to be examined.

On June 18, 2013, plaintiff received notification from the Illinois Professionals Health Program ("IPHP") that it had been contacted by telephone by an employee of GCH requesting that IPHP issue a recommendation that plaintiff be required to undergo an evaluation regarding a possible impairment. IPHP responded in writing by refusing to make the recommendation. MEC then called an emergency meeting to discuss plaintiff's status. On June 25, 2013, MEC tendered a letter to plaintiff indicating that he was not under investigation and that no adverse action against him was ever taken or recommended. After receiving that confirmation plaintiff resigned from the GCH medical staff. "In the interim" plaintiff had sought employment with other healthcare entities. These entities submitted requests for verification that plaintiff was in good standing on the GCH medical staff and not subject to disciplinary proceedings or under investigation. GCH refused to provide such verification.

## **DISCUSSION**

Plaintiff has moved to keep the entire case under seal, arguing that under the Act, which applies to the instant case under Fed. R. Evid. 501, the "mere existence of a peer review investigation of a medical staff member is absolutely privileged from disclosure unless and until adverse action is taken against the medical staff member." Claiming that his complaint seeks damages "arising out of the disclosure of the existence of a purported peer review investigation that could not be disclosed as a matter of law even if true, as no peer review was ever initiated

4

against plaintiff that resulted in any adverse action taken against him," he argues that if the court unseals the record in a manner the permits public disclosure of a peer review involving plaintiff, the very damage he seeks to remedy will be exacerbated.

Plaintiff's theory is creative and novel, but wrong. Section 2101 of the Act, 735 ILCS 5/8-2101, on which plaintiff relies, provides in relevant part that:

> All information, interviews, reports, statements, memorandum, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of . . . committees of ambulatory surgical treatment centers or post-surgical recovery centers or their medical staffs, or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees . . ., used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care . . . shall be privileged . . ..

The Act further provides that such privileged material "shall not be admissible as evidence nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS 5/8-2102.

The Act is intended to "encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease," and is premised on the belief that "absent the privilege, physicians might be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." Anderson v. Rush-Copley Medical Center, Inc., 385 Ill.App.3d 167, 173-74 (2d Dist. 2008). Only information "initiated, created, prepared or generated by a peer review or quality control committee" is protected by the Act. Kopolovic v. Shaw, 2012 IL App(2d) 110383, ¶19, 967 N.E.2d 368, 376 (2d Dist. 2012). Thus, information generated or created prior to the commencement of the peer review committee is not privileged and cannot be made privileged by later submission to the

5

committee. Id.; Anderson, 385 Ill.App.3d at 174. Neither does the Act protect information generated after the peer review process ends. Anderson, 385 Ill.App.3d at 174. It is the mechanics of the peer review process that is protected against disclosure, including the information gathering and deliberations leading to an ultimate decision rendered by a peer review committee. Id.

Nothing in the wording of the Act, or the case law interpreting it, suggests that the mere existence of a peer review process regardless of its outcome, is protected from disclosure. The burden of establishing a privilege under the Act is on the party seeking to invoke it. Id. Plaintiff has failed to carry that burden, at least with respect to the existence of a legitimate peer review process. Consequently, plaintiff's motion to extend the seal of the entire case is denied.[2]

Finally, the parties all agree that portions of plaintiff's complaint should be redacted from the public record for reasons unrelated to the privilege issue. Therefore, the court directs plaintiff to file in the public record a version of the complaint redacting protected portions of ¶¶ 26 through 30. Plaintiff shall also file a full unredacted complaint under seal. All further documents shall be filed in the public record, with the exception that all references to the matters redacted from ¶¶ 26 through 30 of the complaint, and any peer review material covered by the Act shall be redacted.

---

[2]This does not mean that, should defendants claim that a peer review actually took place, they can ignore the non-disclosure provisions of the Act in their court filings. Should there be any doubt about the context of such filings, all parties are directed to submit proposed filings to the court in camera for review.

## **CONCLUSION**

For the reasons discussed above, and subject to the directions in the previous paragraph, plaintiff's motion to extend the seal is denied. The parties are directed to file in the public record all documents filed previously under seal, subject to the directions set forth above.


**ENTER:** September 15, 2015

*/s/ Robert W. Gettleman*
_____
**Robert W. Gettleman**
**United States District Judge**