IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R. SHERWIN PARUNGAO, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 4453 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COMMUNITY HEALTH SYSTEMS, INC., a | ) | |
| Delaware corporation, COMMUNITY HEALTH | ) | |
| SYSTEMS PROFESSIONAL SERVICES | ) | |
| CORPORATION, a Delaware corporation, | ) | |
| GALESBURG HOSPITAL CORPORATION, an | ) | |
| Illinois corporation d/b/a Galesburg Cottage | ) | |
| Hospital, KNOX CLINIC CORP, an Illinois | ) | |
| corporation, and MARK E. DAVIS, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dr. R. Sherwin Parungao, has brought a six count complaint against: Community Health Systems, Inc. ("CHSI"); Community Health Systems Professional Services Corp. ("CHSPSC"); Galesburg Hospital Corporation, d/b/a Galesburg Cottage Hospital ("GCH"); Knox Clinic Corp. ("Knox Clinic"); and Dr. Mark E. Davis. Count I alleges a breach of contract against CHSPSC and/or CHSI and Knox Clinic. Count II alleges tortious interference with contractual relations against Davis and GCH. Counts III and IV allege breach of contract against all five defendants. Counts V and VI are claims for intentional infliction of emotional distress and civil conspiracy against all five defendants. CHSI has moved to dismiss for lack of personal jurisdiction, and the other defendants have each brought separate motions to dismiss for failure to state a claim, each raising the legal arguments that plaintiff's complaint is barred by the Illinois single refiling rule, 735 ILCS 5/13-217, and the doctrine of res judicata, as well as separate arguments attacking the sufficiency of each count. Because the court agrees that

the complaint is barred by both the single refiling rule and res judicata, the motions to dismiss for failure to state a claim are granted. CHSI's motion to dismiss for lack of personal jurisdiction is denied as moot.

## BACKGROUND

### The Instant Complaint

Plaintiff is a board certified general surgeon and has been licensed to practice medicine in Illinois since 2006. In 2006 plaintiff was recruited by GCH to locate his practice at a GCH facility. The recruitment included an incentive guarantee. Plaintiff began private practice in Galesburg, Illinois and was granted medical staff membership and clinical privileges at GCH pursuant to the GCH Medical Staff Bylaws (the "Bylaws"). Plaintiff was reappointed for successive terms without limitations.

Approximately three years after joining the GCH Medical Staff, plaintiff accepted employment on a full time basis at GCH through Knox Clinic. His employment was conditioned on continued good standing and maintenance of privileges as a member of the GCH Medical Staff, including a duty to comply with the Bylaws.

Plaintiff's employment was renewed in an agreement (the "Agreement") dated October 19, 2012, with Knox Clinic and approved by its parent GHC. The Agreement was for a term of five years, through October 17, 2017, but could be terminated by either party without cause on 180 days written notice. The Agreement included a Trauma Coverage Addendum requiring plaintiff to provide on-call trauma coverage and back-up EMT and emergency department coverage to GCH, with the intent that plaintiff and Dr. Davis share the responsibilities equally. Plaintiff did not receive a base salary; instead his compensation was

based on each Relative Value Unit ("RVU") he performed, plus a daily rate for on-call trauma work.

Sometime in January 2013, Davis, who was president of the GCH Medical Staff and a member of the GCH Medical Executive Committee ("MEC"), undertook efforts to convince Earl Tamar, CEO of GCH and Knox Clinic, as well as the remaining members of the MEC, that plaintiff suffered from some sort of mental impairment and posed a threat to patient safety. Davis told plaintiff that the MEC was considering undertaking an investigation (peer review) of plaintiff. Davis encouraged plaintiff to circumvent the anticipated peer review by self-reporting that he suffered from an impairment, thereby giving Davis the ability to convince the MEC to forego any investigation. Plaintiff refused to self-report, telling Davis that he would cooperate with any legitimate MEC investigation, and in the event the MEC determined that corrective action was necessary, plaintiff would defend his professional conduct.

Unbeknownst to him at that time, plaintiff later discovered that during the period that Davis was asking plaintiff to self-report, Davis was actively pursuing and ultimately engaging in a sexual relationship with a member of plaintiff's immediate family. Once that family member ended the relationship in April 2013, Davis went to Tamar and the MEC seeking a termination of plaintiff's employment and medical staff privileges.

On May 21, 2013, Knox Clinic, through Tamar, gave plaintiff a written 180 day notice of termination without cause. Tamar also told plaintiff that GCH would not allow plaintiff to exercise his medical privileges. Two days later, plaintiff received a directive from the MEC to submit himself for an examination and evaluation to determine whether he suffered from an impairment. There was no formal peer review or other investigation pending at that time.

3

Tamar told plaintiff that if he did not submit to an evaluation that "resulted" in a finding of impairment, GCH would cause a negative report to be made to the National Practitioner Data Bank ("NPDB"). Plaintiff sought information from GCH and MEC to determine if any investigation had been properly instituted under the Bylaws or the Impaired Practitioner Policy, but GCH and MEC refused to respond. Because no committee had been properly convened, plaintiff refused to be examined.

On June 18, 2013, plaintiff received notification from the Illinois Professional Health Program ("IPHP") that it had been contacted by telephone by an employee of GCH requesting that IPHP issue a recommendation that plaintiff be required to undergo an evaluation regarding a possible impairment. IPHP refused in a written response. MEC then called an emergency meeting to discuss plaintiff's status. On June 25, 2013, MEC tendered a letter to plaintiff indicating that he was not under investigation and that no adverse action against him had ever been taken or requested. After receiving that confirmation, plaintiff resigned from the GCH Medical Staff. "In the interim" (before plaintiff resigned), plaintiff had sought employment with other healthcare entities. These entities submitted requests for verification that plaintiff was in good standing on the GCH Medical Staff and not subject to disciplinary proceedings or adverse actions. Plaintiff alleges that GCH refused to provide such verification, thereby hindering his ability to obtain privileges with the medical staff of other healthcare entities.

Prior Litigation

1.  Parungao I - 13 CH 73

Late in the day on Friday, July 12, 2013, plaintiff, through counsel, filed in the Circuit Court of Knox County, Illinois, an ex parte motion to proceed as a John Doe plaintiff in an action against CHSPSC, GCH and Knox Clinic. The motion was heard by Judge Scott Shipplett. Plaintiff told Judge Shipplett that he intended to file a verified complaint for injunctive relief along with a motion for a temporary restraining order if granted leave to proceed anonymously. Plaintiff argued to Judge Shipplett that simply identifying plaintiff in the complaint could exasperate the situation that formed the basis for the requested injunction. After a lengthy hearing, Judge Shipplett, in an abundance of caution, allowed plaintiff to proceed anonymously but warned plaintiff that the case might be assigned to a different judge and that after defendants appeared there might be a motion to reconsider. Plaintiff indicated that he understood.

The following Monday, July 15, 2013, plaintiff filed his verified "John Doe" complaint for injunctive and declaratory relief. Plaintiff and the defendants appeared that morning before Judge Standard, to whom the case had been reassigned. Judge Standard indicated that he had read the complaint and that he understood the parties wanted to have a hearing that afternoon on the issuance of preliminary relief. Plaintiff's counsel then explained that he had not yet filed a motion for preliminary injunction because he was unsure of his ability to file under seal but was prepared to do so once the court decided that issue.

The parties then had lengthy discussions/arguments about what, if anything, should be sealed and if the case could or should proceed under a fictitious name. During that argument plaintiff indicated that he wanted to file his motion for preliminary injunction. After

5

unsuccessfully trying to get to and perhaps reach agreement on what the court determined to be the real issues to be between the parties – defendants' response to inquiries from plaintiff's prospective employers – the court vacated Judge Shipplett's decision to allow plaintiff to file under a fictitious name. Plaintiff then immediately moved to nonsuit, which was granted without objection. Plaintiff indicated that he would be back to file the same motion and complaint the following day.

Parungao II - 13 CH 75

True to his word, the following morning, July 16, 2013, plaintiff initiated a new action by filing a verified petition to file cause of action under seal and under a fictitious name. Plaintiff tendered his proposed verified complaint and motion for preliminary injunction to the court for an in camera review. The proposed complaint was identical to the Parungao I complaint. Judge Standard denied plaintiff's petition, and the complaint in Parungao II was never filed. Plaintiff appealed the denial of his leave to file, but ultimately voluntarily dismissed that appeal.

Parungao III - The Piper Litigation

On October 21, 2013, plaintiff filed a third action in the Circuit Court of Knox County, this time naming Dr. Daniel Piper, Chief of Staff at GCH as the lone defendant. The complaint alleged that on May 28, 2013, Dr. Piper responded to requests for verification of plaintiff's staff privileges and credentials at GCH from Gaye Shaw, Director of Medical Staff Affairs at St. Mary's Hospital in Centralia, Illinois ("St. Mary's") and Natalie Brown, Medical Staff Coordinator at Weatherby Locums in Ft. Lauderdale, Florida ("Weatherby"). The responses, according to the complaint, indicated that plaintiff was not the subject of any disciplinary action, but was the subject of "other action," . . . "as a result of an ongoing review related to his

6

participation in an impaired practitioner program." Plaintiff alleged that the letters were false, that Dr. Piper knew the statements in the letters were false, and that the statements were defamatory per se.

The Piper complaint alleged only that plaintiff had stopped practicing at GCH in May 2013 and formally resigned in July 2013, but unlike Parungao I and II and the instant case, did not allege the circumstances leading up to the resignation. Consistent with his view that the events leading up to his resignation, including the letters, were potentially damaging to his career, plaintiff did not attach the actual letters.

Dr. Piper moved to dismiss under 735 ILCS 5/2-619, attaching the two letters and arguing that: the statements were not actionable under the innocent construction rule; he had a qualified privilege to convey the information to administrators from the two medical facilities; he was statutorily immune from liability under § 10.2 of the Illinois Hospital Licensing Act (210 ILCS 85/10.2) and § 60/5 of the Medical Practices Act (227 ILCS 60/5); and that plaintiff's signed release of liability forms barred plaintiff from pursuing the defamation per se claim. Plaintiff filed a written response as well as a motion for a protective order. At the argument on the motion, plaintiff told Judge Shipplett that they had received new facts that "turn the case on its head." Those facts, according to counsel, did not involve Dr. Piper directly, but would need to be protected because they involved a minor. The judge refused to hear those facts, indicating that he wanted to first rule on the pending motion to dismiss.

On January 27, 2014, the court issued a decision letter granting the motion to dismiss. Specifically, the court found that looking at the letters in their entirety, they were subject to innocent construction. Although that alone was sufficient to grant the motion, the court also held

7

that Dr. Piper was protected by a qualified privilege and was statutorily immune. The court rejected Dr. Piper's argument that he was protected by the releases signed by plaintiff, indicating that that issue was more properly addressed in a motion for summary judgment.

Plaintiff appealed that decision. The Illinois Appellate Court affirmed, concluding first that the letters did not contain per se defamatory statements and even if they did, the language is capable of innocent construction. The court also disagreed with the trial court and held that the motion to dismiss could have been granted based on the wording of the releases executed by plaintiff. The appellate court did not reach the issues of qualified privilege and statutory immunity. Parungao v. Piper, 2014 IL App. (3d) 140197-U (3d Dist. 2015).

## DISCUSSION

Defendants have moved to dismiss, arguing first that the instant suit is barred by Section 13-217 of the Illinois Code of Civil Procedure, 735 ILCS 5/13-217, which allows a plaintiff to refile a cause of action within one year of its dismissal or the remaining statute of limitations, which ever is greater. Gendek v. Jehangir, 119 Ill.2d 338, 340 (1988). The rule applies in the instant case because federal jurisdiction is based on diversity of citizenship. Evans v. Lederle Labs., 167 F.3d 1106, 1111-12 (7th Cir. 1999). The rule permits one refiling only. A second refiling is not permitted, even if the statute of limitations has not expired. Flesner v. Youngs Dev. Co., 145 Ill.2d 252, 254 (1991).

Defendants argue that Parungao I constitutes a first filing and that Parungao III, the Piper Litigation, constitutes a first refiling. Therefore, according to defendants, the instant case constitutes an impermissible second refiling.

8

Plaintiff's response brief does not directly address § 13-217, but appears to argue that because Judge Standard vacated the order allowing plaintiff to proceed under a fictitious name, Parungao I was never actually "filed." That is simply incorrect. After Judge Shipplett granted plaintiff's motion to proceed under a fictitious name, plaintiff filed the Parungao I complaint. He did so after being specifically warned by Judge Shipplett that the order might be vacated. Once Judge Standard vacated the order, plaintiff voluntarily dismissed (nonsuited) the entire case. His argument that the only matter that he voluntarily dismissed was "the cause of action seeking leave to file under a fictitious name and under seal," is pure sophistry. The complaint, which has been provided to the court, is stamped "Filed." Faced with unsealing the complaint, plaintiff elected to nonsuit the entire case, not just the petition. Indeed, if the complaint had not been filed there would have been no case to nonsuit. Thus, the court concludes that Parungao I constitutes a filing for purposes of § 13-217.

The issue thus becomes whether the Piper Litigation (Parungao III) constitutes a second filing of Parungao I, or whether it was a new, separate action.[1] As noted in <u>Evans</u>, the "rule does not differentiate on its face between actions brought against different defendants by the same plaintiff." <u>Evans</u>, 167 F.3d at 1113. For purpose of § 13-217, a complaint is considered a refiling when it contains the "same cause of action as defined by res judicata principles." <u>Id</u>. Res judicata bars a further suit if "the same set of facts were essential to maintain both actions or if a single group of operative facts gives rise to the assertion of relief." <u>Id</u>. (<u>Citing</u> <u>Rodgers v. St. Mary's Hosp.</u>, 149 Ill.2d 302 (1992)). Claims are considered the same cause of action "if they

---

[1] There is no dispute that the instant complaint names the same defendants and raises the same claims as in Parungao I and II.

arise from a single group of operative facts, regardless of whether they assert different theories of relief." River Park, Inc. v. City of Highland Park, 184 Ill.2d 290, 311 (1998). This so-called transactional test "permits claims to be part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." Id. "Whether a set of facts constitutes a transaction or a series of transactions is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Huon v. Johnson & Bell, Ltd., 757 F.3d 556, 558 (7th Cir. 2014) (quoting River Park, 184 Ill.2d at 312).

Viewed under this standard it there is no doubt that the Piper Litigation arises out of the same group of operative facts as asserted in Parungao I. Dr. Piper's letters are just one act in the series of events that led to plaintiff's problems with and ultimate resignation from GCH, and that formed the basis for the claims in both Parungao I and the instant case. The simple review of the Parungao I complaint reveals that although Dr. Piper is not identified by name, paragraphs 70 through 78 contain the same operative allegations as alleged in the Piper complaint. Indeed, many of the Piper allegations appear to have been lifted verbatim from Parungao I, and, Parungao I specifically alleges that the letters sent by the Chief of MEC's staff (Piper) were false. Consequently, the court concludes that the Piper Litigation constitutes a second filing of Parungao I. The instant case is thus an impermissible second refiling barred by § 13-217.

Moreover, even if plaintiff is correct (and he is not) that Parungao I was never "filed," the instant suit is barred by res judicata based on the dismissal with prejudice and subsequent affirmance in Piper. Because Piper is an Illinois state court decision, this court applies Illinois'

law on preclusion. Allen v. McCurry, 449 U.S. 90, 96 (1980); 28 U.S.C. § 1738. Under Illinois law a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. River Park, 184 Ill.2d at 302. "The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." Id. Res judicata applies when there is: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of the parties or their privies. Id.

There is no doubt that the dismissal with prejudice affirmed on appeal in Piper constitutes a final judgment on the merits. "[T]he dismissal of a complaint for failure to state a claim is an adjudication on the merits . . . ." Id. at 303; Illinois Supreme Court Rule 273 (an involuntary dismissal . . . operates as an adjudication on the merits.).

As explained above, there is also an identity of the cause of action, because the Piper Litigation and the instant case arise out of a single group of operative facts. Id.

Finally, there is an identity of parties because Dr. Piper is in privity with the instant defendants. In Illinois, privity exists between "parties who adequately represent the same legal interests." Burris v. Progressive Land Developers, Inc., 151 Ill.2d 285, 296 (1992). "It is the identity of interests that controls in determining privity, not the nominal identity of the parties." Id. In responding to the inquires from the other health care facilities about plaintiff's status, Dr. Piper was obviously acting on behalf of GCH and the other defendants, not for himself. The requests were made to GCH and the letters were prepared on GCH letterhead. His legal interests are undoubtedly the same as defendants. They were each defending the integrity of the peer

review process at the hospital and that the employment information was disseminated in a proper manner. Indeed, it is difficult to imagine how their legal interests could be more aligned.

Consequently, because all three requirements have been satisfied, the court concludes that the instant case is barred by res judicata.

## CONCLUSION

For the reasons described above, the motions to dismiss for failure to state a claim filed by defendants Galesburg Hospital Corporation (Doc. 90), Knox Clinic Corporation (Doc. 92), Mark Davis, (Doc. 96) and Community Health Systems Professional Services Corporation (Doc. 102) are granted. Defendant Community Health Systems, Inc.'s motion to dismiss for lack of personal jurisdiction is denied as moot.

**ENTER:** **June 28, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**